IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| APACHE CORPORATION, | § | |
| | § | |
| Plaintiff | § | |
| | § | Civil Action 4:10-cv-00076 |
| v. | § | |
| | § | |
| JOHN CHEVEDDEN, | § | |
| | § | |
| Defendant. | § | |

## Apache's Reply Brief on the Merits

## Table of Contents

I.    Chevedden's Close Relationship with USPX ............................................................1

    A.    Chevedden is Field Agent Badge No. 1 ............................................. 2

    B.    Chevedden's Abuse of the Shareholder Proposal
    Rules ........................................................................................ 4

II.    Apache is Entitled to Exclude Chevedden's Proposal ..........................................6

    A.    Under the Plain Language of Rule 14a-8(b)(2),
    Apache is Entitled to Exclude Chevedden's
    Proposal ........................................................................................ 8

    B.    Under *Kurz v. Holbrook,* Apache is Entitled to
    Exclude Chevedden's Proposal .................................................... 10

    C.    Under *Hain Celestial*, Apache is Entitled to Exclude
    Chevedden's Proposal ................................................................ 13

        1.    *Hain Celestial* Is Neither Controlling Nor Persuasive ............... 13

        2.    Ram Trust is an Investment Advisor, *Not* an
        Introducing Broker-Dealer ........................................................ 14

        3.    Rule Changes Should Come from the SEC Itself, Not
        from the Staff's "Informal Views" ............................................ 19

III.    Shareholders Easily Can Comply with Rule 14a-8(b)(2) ................................20

    A.    Shareholders Can Prove their Eligibility as
    "Registered Holders" under Rule 14a-8(b) ................................. 21

    B.    Shareholders Can Prove their Eligibility with
    "Confirmation of Shares" Letters from DTC ............................ 24

IV.    Conclusion ...............................................................................................25

Table of Authorities

Cases

*AFSCME v. AIG,*
    462 F.3d 121 (2d Cir. 2006).................................................................14

*America Hardware Corp. v. Savage Arms Corp.,*
    136 A.2d 690 (Del. 1957) ..................................................................24

*Apache v. NYCERS,*
    621 F. Supp. 2d 444 (S.D. Tex. 2008) .............................................14

*Berlin v. Emerald Partners,*
    552 A.2d 482 (Del. 1988) ..................................................................11

*Enstar Corp. v. Senouf,*
    535 A.2d 1351 (Del. 1987) ...............................................................24

*Hall v. Tyco Int'l.,*
    223 F.R.D. 219 (M.D. NC 2004) ........................................................7

*In re Giant Portland Cement Co.,*
    21 A.2d 697 (Del. Ch. 1941)..............................................................24

*Kurz v. Holbrook,*
    2010 WL 707425 (Del. Ch. Feb. 9, 2010) ............................... passim

*Lewis v. Corroon & Reynolds Corp.,*
    57 A.2d 632 (Del. Ch. 1948)..............................................................24

*Nickles v. United Nuclear Corp.,*
    192 A.2d 628 (Del. Ch. 1963).............................................................24

*Preston v. Allison,*
    650 A.2d 646 (Del. 1994) ..................................................................11

*Shaw v. Agri-Mark, Inc.,*
    663 A.2d 464 (Del. 1995) ..................................................................11

*Sierra Club v. FEMA,*
    2007 WL 3472851 (S.D. Tex. Nov. 14, 2007) ............................1, 2

*Testa v. Jarvis,*
    1994 WL 30517 (Del. Ch. Jan. 12, 1994) .......................................11

Statutes, Rules or Regulations

FRAP 29.................................................................................................................2

15 U.S.C. § 78o.....................................................................................................19

15 U.S.C. § 78ccc..................................................................................................19

15 U.S.C. § 80b-2..................................................................................................15

17 C.F.R. § 240.14a-1...........................................................................................18

17 C.F.R. § 240.14a-8......................................................................................passim

17 C.F.R. § 240.15b1-1.........................................................................................19

17 C.F.R. § 275.206.........................................................................................16, 17

32 M.R.S.A. § 10303(3)........................................................................................15

Delaware General Corporation Law ¶¶ 219 and 220......................................11, 20

No-Action Letters

Actuant Corp. (Oct. 16, 2001)
Actuant Corp. (Oct. 9, 2002)
Alcoa Inc. (Feb. 18, 2009)
Allegheny Energy, Inc. (Dec. 22, 2009)
Allegheny Energy, Inc. (Mar. 26, 2002)
AMR Corp. (Feb. 13, 2005)
AMR Corp. (Mar. 15, 2004)
Anheuser-Busch Cos., Inc. (Jan. 24, 2006)
AT&T Inc. (Jan. 17, 2008)
AT&T Wireless Services, Inc. (Feb. 6, 2004)
Atlas Air Worldwide Holdings, Inc. (Mar. 14, 2003)
AutoNation, Inc. (Mar. 14, 2002)
Bethlehem Steel Corp. (Mar. 25, 2002)
Burlington Northern Santa Fe Corp. (Jan. 9, 2004)
Charles Schwab Corp. (Feb. 2, 2005)
Cigna Corp. (Feb. 21, 2006)
Citigroup Inc. (Feb. 28, 2002)
Citigroup Inc. (Jan. 4, 2010)
Clear Channel Communications, Inc. (Feb. 9, 2006)
Coca-Cola Co. (Feb. 4, 2008)
Coca-Cola Co. (Jan. 19, 2001)
Continental Airlines, Inc. (Feb. 22, 2010)
Dow Chemical Co. (Feb. 26, 2002)
El Paso Corp. (Feb. 13, 2004)

EMC Corp. (Mar. 14, 2002)
EQT Corp. (Jan. 11, 2010)
FedEx Corp. (July 1, 2004)
Fluor Corp. (Jan. 11, 2010)
Fortune Brands, Inc. (Feb. 12, 2009)
Gannett Co., Inc. (Jan. 7, 2010)
General Dynamics Corp. (Jan. 27, 2010)
General Electric Co. (Dec. 27, 2004)
General Motors Corp. (Apr. 3, 2001)
General Motors Corp. (Apr. 3, 2002)
General Motors Corp. (Apr. 5, 2007)
Home Depot, Inc. (Feb. 10, 2009)
Honeywell Int'l Inc. (Jan. 30, 2003)
Int'l Bus. Machines Corp. (Jan. 7, 2002)
Intel Corp. (Feb. 1, 2005)
Intel Corp. (Mar. 13, 2009)
Int'l Paper Co. (Feb. 28, 2007)
Johnson & Johnson (Jan. 3, 2005)
JP Morgan Chase & Co. (Feb. 15, 2008)
JPMorgan Chase & Co. (Jan. 4, 2005)
McCormick & Co., Inc. (Dec. 28, 2005)
McGraw Hill Co., Inc. (Jan. 28, 2008)
McGraw Hill Co., Inc. (Mar. 12, 2007)
McGraw-Hill Cos., Inc. (Jan. 13, 2003)
McKesson Corp. (Mar. 19, 2005)
MeadWestvaco Corp. (Mar. 12, 2007)
Media General, Inc. (Jan. 26, 2005)
Mesa Air Group, Inc. (Dec. 7, 2004)
Microchip Tech. Inc. (May 26, 2009)
Moody's Corp. (Mar. 7, 2002)
Motorola, Inc. (Jan. 10, 2005)
Omnicom Group Inc. (Mar. 16, 2009)
Oregon Trail Fin. Corp. (Jun. 26, 2000)
Pfizer Inc. (Feb. 20, 2009)
Pfizer Inc. (Jan. 16, 2004)
PG&E Corp. (Mar. 1, 2002)
Pioneer Natural Res. Co. (Feb. 12, 2010)
Qwest Communications Int'l Inc. (Jan. 23, 2008)
Rentech, Inc. (Dec. 15, 2008)
Robert Half Int'l (Feb. 15, 2002)
Sabre Holdings Corp. (Jan. 28, 2004)
Safeway Inc. (Feb. 6, 2008)
Schering-Plough Corp. (Mar. 27, 2009)
Sempra Energy (Feb. 7, 2002)
Time Warner Inc. (Feb. 19, 2009)
Time Warner Inc. (Jan. 21, 2005)

TRW Inc. (Jan. 24, 2001)
UAL Corp. (Feb. 7, 2003)
Verizon Communications Inc. (Jan. 25, 2008)
Wal-Mart Stores, Inc. (Jan. 18, 2006)
Wells Fargo & Co. (Jan. 18, 2005)
Western Union Co. (Mar. 4, 2008)
Yahoo! Inc. (Feb. 1, 2005)

Rule 14a-8(b) requires shareholders to prove their shareholder status and eligibility to submit shareholder proposals because only shareholders of a company (and only certain shareholders at that) are permitted to submit proposals for inclusion in that company's proxy. Rule 14a-8(b)'s unequivocal requirement that purported shareholders prove their status and eligibility is the protection companies have against unscrupulous or negligent purported shareholders and their proxies. The integrity of the shareholder proposal process and the SEC's rules require independent verification of shareholder status and eligibility, either by being listed in the company's own records as a registered stockholder under Rule 14a-8(b)(2), or by a "written statement from the 'record' holder" under Rule 14a-8(b)(2)(i). Chevedden admits he is not a registered stockholder, and he failed to satisfy Rule 14a-8(b)(2)(i).

Part I of this reply brief discusses the relationship between Chevedden and his *amicus*. Part II discusses why Apache is entitled to exclude Chevedden's proposal under the plain language of Rule 14a-8, under the Delaware Chancery Court's recent decision in *Kurz v. Holbrook,* and under the SEC staff's no-action letter in *Hain Celestial*. Part III discusses the mechanisms available to Chevedden and other proponents for easily establishing shareholder status and eligibility to submit proposals. Part IV concludes that this Court should declare that Apache properly may exclude Chevedden's purported shareholder proposal from Apache's proxy materials in accordance with Rule 14a-8(b) and (f).

I.
## Chevedden's Close Relationship with USPX

Apache welcomes the United States Proxy Exchange's ("USPX") brief, but it is not proper for USPX to call it an *"amicus curiae* brief." USPX has not appropriately disclosed the extent of its interest and friendship with Chevedden and, worse, appears to have taken steps to conceal it. USPX is acting as a "friend of Chevedden," not a "friend of the court." *See Sierra*

*Club v. FEMA,* 2007 WL 3472851, *2 (S.D. Tex. Nov. 14, 2007) (Rosenthal, J.) ("there is significant variance in the extent to which district courts are willing to permit the participation of an *amicus* who acts primarily as an advocate for one party"); *see also* FRAP 29(b)(1).

A.    Chevedden is Field Agent Badge No. 1

USPX says on its website that it "is a non-government organization dedicated to facilitating the exercise of shareholder rights, primarily through the proxy process." *See* http://us.proxyexchange.org/. As of February 17, 2010 – just days before USPX sought leave to file its *amicus* brief – USPX's website stated that USPX "was founded in May 2009 by the Investor Suffrage Movement" and the website was hyper-linked to the Investor Suffrage Movement's website. *See* Langham Aff. at ¶ 3. That language and link is gone now, and the website now states "This website will be expanded in 2010." (X-17).[1] USPX's website still has a link to "Read the paper that launched the movement," and that paper is titled "Investor Suffrage Movement" by Glyn A. Holton. *Id.*

The website for the Investor Suffrage Movement, http://isuffrage.org/, now consists of a single page with a quote from Thomas Jefferson, a statement that "The Investor Suffrage Movement is a non-profit organization dedicated to educating citizens about their rights and responsibilities as investors," and contact information of "Contact: glyn@isuffrage.org." (X-18). This "glyn" is Glyn A. Holton, USPX's executive director, founder of the Investor Suffrage Movement, and co-signer of USPX's brief in this case.

The Investor Suffrage Movement's website also says "This website will be expanded in 2010" but, interestingly, it neglects to mention that it recently underwent a rather curious and dramatic contraction. *See* http://isuffrage.org/. As of February 10, 2010 – a week before USPX

---

[1] The exhibits to this reply brief start at X-17, continuing the number sequence from Apache's opening brief which left off at X-16.

sought leave to file an *amicus* brief – the Investor Suffrage Movement's website contained considerably more content and revealed, for example, that ***John Chevedden is one of the Movement's "Pioneer Field Agents" and received Badge No. 1.*** (X-19). The following *used to be* posted on the Investor Suffrage Movement's website:



**Advocating for Shareholders**
*September, 2009*

The United States Proxy Exchange is already advocating for the rights of shareholders. Over the past two months, it has organized two substantive letters to the SEC on proposed new rules. Co-signers have included prominent shareholder activists **John Chevedden, John** Harrington, Jim McRitchie, Robert Monks and Steve Nieman. Read the letters here and here.



**Pioneer Field Agents Announced**
*October 31, 2008*

In October, we recruited our first ten **field** agents. Shareholder activist **John Chevedden** lead, receiving badge no. 00001. See the entire list.

*Id.* The now-deleted webpage that listed Chevedden as Field Agent Badge No. 1 also listed *amicus* co-signers James McRitchie as Field Agent Badge No. 2 and Glyn A. Holton as Field Agent Badge No. 6. (X-20). All this content mysteriously disappeared in the days before USPX submitted its February 19, 2010 motion for leave to file an *amicus* brief in this case.

USPX and CorpGov.net lay their agenda bare at page 25 of their brief when they argue there is "logical, legal and practical evidence in support of" their suggested interpretation/abandonment of Rule 14a-8(b)(2), and "ask the court to conclude that an introducing broker can be the owner of record for Rule 14a-8(b)(2)." USPX and CorpGov.net ask this Court to do far more than render a decision in this case. They effectively ask this Court

to usurp the rule-making authority and role of the SEC, adopt *Hain Celestial*,[2] and declare a change to Rule 14a-8(b)(2) in a way that is not necessary to decide this case, and in a way that is contrary to the language and purpose of the Rule. That, of course, would be improper.

B.     Chevedden's Abuse of the Shareholder Proposal Rules

USPX says on page 20 that Apache tried to "paint Mr. Cheveddden as some sort of obstructionist crank." Apache didn't try to paint Chevedden as anything. Apache just stated the facts, and USPX drew its own conclusion about what those facts show. Apache does not believe Chevedden is an "obstructionist crank." Nor does Apache believe he is a shareholder. Apache believes Chevedden is a person who tries to take advantage of the shareholder proposal rules, but then expresses "outrageous" indignation at being forced to play by those same rules. *See* Hrg. Tr. at 27-28.

In his Spartan response, Chevedden tellingly does *not* say that he believes he complied with Rule 14a-8. Instead, he says he "made a *good faith effort to comply* with the rule" and did what he says "99% of shareholders did." (All emphasis in this brief is added). Chevedden's purported "good faith effort" notwithstanding, he did not satisfy Rule 14a-8(b)(2) here and is not entitled to access Apache's proxy materials.

Chevedden's suggestion that he "made a good faith effort to comply with the rule" should not be accepted at face value. The record in this case contains undisputed evidence that Chevedden himself "was assisting other people in submitting" proposals that were, as he puts it, "mistakes," and that failed to satisfy Rule 14a-8(b)'s eligibility requirements. *See* Chevedden Aff. at ¶¶ 3-8. Chevedden says in ¶ 4 of his affidavit that "I strive to keep *mistakes* rare, but they *do happen.*" Chevedden admits in ¶ 5 that his/Kessler's prior submission of a proposal to

---

[2] As discussed in Part II.C., Chevedden's offer of proof would not satisfy even the improper view of Rule 14a-8(b)(2)'s requirements expressed in the *Hain Celestial* no-action letter.

Apache was improper because Kessler didn't own enough shares, admits in ¶ 6 that his/Steiner's submission of a proposal to Mylan, Inc. was improper because Steiner didn't own any shares, admits in ¶ 7 that his/Steiner's submission to News Corp. was improper because Steiner didn't own enough shares for enough time, and admits in ¶ 8 that five other proposals he helped others make were similarly "mistaken."

In addition to Chevedden's dubious distinction as the most frequent participant in the process, Chevedden also has a history of abusing Rule 14a-8. In 2008, Intel Corporation noted that "Mr. Chevedden and his tactics are well known in the stockholder proposal community . . . In thus circumventing the ownership requirement in Rule 14a-8(b), Mr. Chevedden has a singular distinction; we are unaware of any other proponent who operates in such a manner, or on so widespread a basis, in disregarding the Commission's stockholder proposal rules." *Intel Corp.* (March 13, 2009); *see also TRW Inc.* (Jan. 24, 2001) (criticizing Chevedden); *PG&E Corp.* (Mar. 1, 2002) (criticizing Chevedden); *Sempra Energy* (Feb. 7, 2002) (identifying "Chevedden's large and growing stable of nominal proponents," and noting that, "to avoid the inconvenience of having to have an economic stake in his target companies, [Chevedden] solicits proxies from target company shareholders and submits his own proposals to the target in the name of his nominal proponents"). Chevedden and others for whom he has acted as proxy have had at least 52 shareholder proposals excluded under Rule 14a-8(b) over the past eight years on the basis of his failure to provide adequate proof of ownership.[3]

---

[3] *See Continental Airlines, Inc.* (Feb. 22, 2010); *General Dynamics Corp.* (Jan. 27, 2010); *Fluor Corp.* (Jan. 11, 2010); *Gannett Co., Inc.* (Jan. 7, 2010); *Citigroup Inc.* (Jan. 4, 2010); *Allegheny Energy, Inc.* (Dec. 22, 2009); *Pfizer Inc.* (Feb. 20, 2009); *Time Warner Inc.* (Feb. 19, 2009); *Alcoa Inc.* (Feb. 18, 2009); *Fortune Brands, Inc.* (Feb. 12, 2009); *Home Depot, Inc.* (Feb. 10, 2009); *JPMorgan Chase & Co.* (Feb. 15, 2008); *Safeway Inc.* (Feb. 6, 2008); *Coca-Cola Co.* (Feb. 4, 2008); *Verizon Communications Inc.* (Jan. 25, 2008); *General Motors Corp.* (April 5, 2007); *Int'l Paper Co.* (Feb. 28, 2007); *Wal-Mart Stores, Inc.* (Jan. 18, 2006); *Anheuser-Busch Cos., Inc.* (Jan. 24, 2006); *McKesson Corp.* (Mar. 19, 2005); *AMR Corp.* (Feb. 13, 2005); *Yahoo! Inc.* (Feb. 1, 2005); *Charles Schwab Corp.* (Feb. 2, 2005); *Intel Corp.* (Feb. 1, 2005); *Time Warner Inc.* (Jan. 21, 2005); *Motorola, Inc.* (Jan. 10, 2005);

Chevedden also routinely flouts Rule 14a-8(h)'s mandatory requirement that the proponent or representative "must attend" the annual stockholder meeting in person "to present the proposal." Under Rule 14a-8(h)(3), failure to attend results in the company's right to exclude for two years any proposals from the absent shareholder. Chevedden and those for whom he served as proxy have been excluded under Rule 14a-8(h) at least ten times in the past seven years.[4]

Apache's skepticism of Chevedden's proposal here was more than justified by Apache's prior experience in 2006 with Chevedden's challenged-then-withdrawn proposal – Chevedden admits this was one of his "mistakes" – and by Chevedden's well-documented history of abuse. Apache's suspicions became more acute when it learned that Chevedden's inadequate offer of proof came from Ram Trust Services, an investment advisory firm founded by and affiliated with Robert A. Monks (R - a - m), another well-known shareholder activist. With or without basis for skepticism, Apache (and any other company) would be well within its rights to do exactly what Rule 14a-8(b)(2) expressly permits and demand that proponents provide the required proof of shareholder status and eligibility as a prerequisite to including a proposal in the proxy materials.

## II.
## Apache is Entitled to Exclude Chevedden's Proposal

Rule 14a-8 provides that "in order to have your shareholder proposal included on a

---

JPMorgan Chase & Co. (Jan. 4, 2005); Johnson & Johnson (Jan. 3, 2005); General Electric Co. (Dec. 27, 2004); Mesa Air Group, Inc. (Dec. 7, 2004); FedEx Corp. (July 1, 2004); El Paso Corp. (Feb. 13, 2004); AT&T Wireless Services, Inc. (Feb. 6, 2004); Sabre Holdings Corp. (Jan. 28, 2004); Pfizer Inc. (Jan. 16, 2004); Burlington Northern Santa Fe Corp. (Jan. 9, 2004); Atlas Air Worldwide Holdings, Inc. (Mar. 14, 2003); UAL Corp. (Feb. 7, 2003); Honeywell Int'l Inc. (Jan. 30, 2003); McGraw-Hill Cos., Inc. (Jan. 13, 2003); Actuant Corp. (Oct. 9, 2002); General Motors Corp. (April 3, 2002); Bethlehem Steel Corp. (Mar. 25, 2002); AutoNation, Inc. (Mar. 14, 2002); Moody's Corp. (Mar. 7, 2002); Citigroup Inc. (Feb. 28, 2002); PG&E Corp. (Mar. 1, 2002); Dow Chemical Company (Feb. 26, 2002); Actuant Corp. (Oct. 16, 2001); General Motors Corp. (Apr. 3, 2001); TRW Inc. (Jan. 24, 2001).

[4] See R.J. Reynolds Tobacco Holdings, Inc. (Dec. 23, 2002); Caterpillar Inc. (Mar. 19, 2007); Northwest Airlines Corp. (Jan. 24, 2005); Service Corp. Int'l (Feb. 6, 2004); UIL Holdings Corp. (Jan. 28, 2004); Moody's Corp. (Jan. 25, 2004); Hubbell Inc. (Jan. 7, 2004); Int'l Business Machines Corp. (Jan. 2, 2004); Int'l Business Machines Corp. (Jan. 24, 2003); Raytheon Co. (Jan. 22, 2003).

company's proxy card, and included along with any supporting statement in its proxy statement, ***you must be eligible and follow certain procedures***." *See also Hall v. Tyco Int'l,* 223 F.R.D. 219, 246 (M.D. NC 2004) ("shareholder must meet certain deadlines for submitted proposals" or "the company may exclude the proposal from its proxy materials"). Rule 14a-8(b)(2) provides that "if like many shareholders you are not a registered holder, the company likely does not know that you are a shareholder, or how many shares you own. In this case, at the time you submit your proposal, ***you must prove your eligibility to the company in one of two ways***: (i) The first way is to submit to the company a *written statement **from the 'record' holder** of your securities* (usually a broker or bank) verifying that, at the time you submitted your proposal, you continuously held the securities for at least one year." Chevedden and USPX do not dispute that the "second way" does not apply to Chevedden in this case. *See* Rule 14a-8(b)(2)(ii).

In its opening brief, Apache established that Rule 14a-8(b)(2) is clear and unambiguous and places the burden of proof on purported shareholder Chevedden, such that he "***must prove*** your eligibility to the company" by "submit[ting] to the company a written statement *from the 'record' holder* of your securities (usually a broker or bank)." Indeed, neither Chevedden nor USPX disputes the following:

- Chevedden has the burden of proof to establish his shareholder status and eligibility to submit a proposal. *See* Rule 14a-8(b)(2).[5]

- After receiving Apache's December 3, 2009 notice of deficiency, (X-3), Chevedden had 14 days, until December 17, 2009, to respond and correct the deficiency. *See* Rule 14a-8(f).

- Chevedden's only timely response was his December 10 email to Apache attaching a December 10 letter from Ram Trust Services. (X-6).

---

[5] Chevedden's suggestion that Apache "has elected to become *willfully ignorant* of the defendant's ownership by failing to ask DTC itself or checking a NOBO list," (emphasis in original), is disingenuous. Under Rule 14a-8(b)(2), it is *Chevedden's burden* to prove his shareholder status and eligibility, and he has failed to do so. Further, Apache *has* tried but *cannot* verify that Chevedden is a shareholder.

- If Chevedden failed to follow one of Rule 14a-8(b)(1-4)'s eligibility or procedural requirements, then Apache is entitled to exclude Chevedden's proposal. *See* Rule 14a-8(f).

Chevedden's only timely response to Apache's December 3, 2009 notice of deficiency is his December 10 email enclosing a December 10 letter from Ram Trust Services. (X-6). Ram Trust's December 10 letter says that "*As introducing broker* for the account of John Chevedden, held with Northern Trust as custodian, Ram Trust Services confirms that John Chevedden has continuously held no less than 50 shares for the following security since November 7, 2008: Apache Corp (APA)." (X-6).[6] Neither Chevedden, nor RAM Trust Services, nor Northern Trust is a registered or record holder of Apache securities. (Peper Aff. at ¶ 5).[7] The record holder is Depository Trust Company's ("DTC's") nominee Cede & Co.

Chevedden has failed to satisfy Rule 14a-8(b)(2)'s requirements under the rule's plain language, under the Delaware Chancery court's recent decision in *Kurz v. Holbrook,* and under the staff's "informal view" in the *Hain Celestial* no-action letter.

A.    Under the Plain Language of Rule 14a-8(b)(2), Apache is Entitled to Exclude Chevedden's Proposal

Rule 14a-8(b)(2) requires proof of shareholder status and eligibility by submitting "a written statement *from the 'record' holder* of your securities." USPX says at page 3 that "DTC

---

[6] On January 22, 2010 – after Apache filed this suit, and long after Rule 14a-8(f)'s mandatory 14-day deadline had expired – Ram Trust sent Apache a letter saying that Northern Trust "acts as a master custodian for RTS" and enclosing a letter from Northern Trust saying that it "is the custodian for Ram Trust" and it "is a member of the Depository Trust Company whose nominee name is Cede & Co." (X-9). Chevedden and USPX do *not* (and could not) contend that Ram Trust's or Northern Trust's untimely January 22, 2010 letters should be considered because it was submitted after this lawsuit was filed, and a month after Rule 14a-8(f)(1)'s 14-day period had expired. To the contrary, *USPX admits at page 5* of its brief that the *"letter from Northern Trust does not"* *"confirm Chevedden's ownership."* The only writings that purport to confirm Chevedden's ownership are the November 23 and December 10 letters from Ram Trust.

[7] USPX admits at page 3 of its brief that "Chevedden holds security entitlements for Apache stock through RAM Trust Services (RTS). **RTS is not a DTC member firm**, so it holds security entitlements in Apache stock through Northern Trust. Northern Trust is a DTC member firm, so it holds security entitlements directly with DTC. DTC holds the underlying Apache stock." Chevedden has not submitted any writing from DTC or its nominee Cede & Co., which Chevedden and USPX say "technically" is the actual record holder of Chevedden's purported stock.

holds the underlying Apache stock." Likewise, Ram Trust's and Northern Trust's January 22, 2010 letters seem to suggest that DTC is the record owner of the purported securities. (X-9). Chevedden did *not* submit any written statement or other proof from DTC or its nominee Cede & Co. Thus, Chevedden failed to establish his shareholder status and eligibility under Rule 14a-8(b)(2), and Apache is entitled to exclude his proposal under Rule 14a-8(f).

In an attempt to avoid this outcome-determinative consequence, USPX takes issue with Apache's assertion in its opening brief that, to satisfy Rule 14a-8(b)'s eligibility requirement, "Chevedden and other shareholders may, as many shareholders do, prepare a letter to be signed by the DTC or its nominee Cede & Co." USPX says at page 8 that "Not only have *we never heard* of a shareowner obtaining such a letter from DTC, we have demonstrated in this brief that it would be *impossible* for them to do so." Chevedden disagrees with USPX's claim of "impossibility" because he's only willing to go so far as to say that "Very few proponents get a letter from DTC."[8] Even so, USPX persists and says at page 4 that "it would be *impossible for DTC to write a letter confirming Chevedden's ownership of Apache's shares,*" and repeats its assertion of "impossibility" at pages 5, 6, 8, and 24.

Actually, it is quite "possible" for DTC to write a confirmation of shares letter. In fact, DTC *does* provide letters to companies verifying the share ownership of beneficial owners of DTC-participant banks and brokers. *See, e.g.,* (X-21, 22, 23 and 24). What's more, DTC's website makes it easy to get such a letter, contains a number of forms of "Proxy Service Letters,"

---

[8] To help make its point, USPX attached 14 affidavits that it had "solicited broadly." The affidavits USPX submitted are remarkable for what they do *not* say. **Chevedden does not swear in his affidavit that he actually owns any Apache stock.** Chevedden has not proved his ownership of Apache stock, and he carefully does not even swear to it. Chevedden's silence in this regard is reminiscent of his objection to service of process by criticizing the process server without denying that he was in fact served. *See* Hrg. Tr. at 10-11.

Likewise, USPX does *not* submit an affidavit from Ram Trust Services, Atlantic Financial Services, Northern Trust, or anyone else swearing that Chevedden actually owns any Apache stock. For that matter, there is no affidavit from Ram Trust Services or Northern Trust swearing that their letters are authentic. The fill-in-the-blank boilerplate affidavits that USPX submitted also are noteworthy for how very few USPX was able to solicit.

including a form letter titled "Confirmation of Shares," that DTC-participant banks and brokers (like Northern Trust here) can use to ask DTC to issue letters confirming the stock ownership of the ultimate beneficial owners (theoretically like Chevedden here), as well as a form letter that DTC sends out to confirm such ownership. *See* http://www.dtcc.com/products/ documentation/asset/asset.php; http://www.dtcc.com/products/documentation/asset/Confirmation _shares_OPEN.doc. (X-25).

But USPX says this is "impossible." And Chevedden says "DTC will not talk" to him, whatever that means. They're so demonstrably wrong, that one wonders how in good conscience they possibly can advocate their false positions. Have they called DTC? Have they written? Have they looked at DTC's website? Have they filled out the form on DTC's website? Have they asked Ram Trust or Northern Trust to do so? Have they ever honestly tried to get a written statement from the true record holder, DTC.

If he really is a shareholder, Chevedden could have requested and obtained a "Confirmation of Shares" letter from DTC. But he chose not to do so, just as he chose not to be a "registered holder" under Rule 14a-8(b)(2).

Under the plain language of Rule 14a-8(b) and (f), Apache is entitled to exclude Chevedden's proposal.

B.     Under *Kurz v. Holbrook,* Apache is Entitled to Exclude Chevedden's Proposal

Both Chevedden and USPX cited the Delaware Chancery Court's recent Delaware law opinion in *Kurz v. Holbrook,* 2010 WL 707425 (Del. Ch. Feb. 9, 2010), for the proposition that "all firms listed on a corporation's Cede breakdown are considered owners of record for that corporation's stock." The *Kurz* court addressed the interpretation and application of certain sections of the Delaware General Corporation Law ("DGCL"), and did *not* consider the interpretation or application of Rule 14a-8. Even so, the *Kurz* court's opinion is instructive and –

even applying its new and relaxed interpretation of the DGCL to the strictly applied requirements of Rule 14a-8(b)(2) – *Kurz* confirms that Chevedden failed to establish his shareholder status and eligibility to submit a proposal.

The *Kurz* court explained that a "Cede breakdown" is a "participant listing" that "identifies by name each bank or broker that holds shares with DTC as of that date and the number of shares held." *Id.* at *9. While purporting to "hew to prior precedent that only a stockholder of record can execute a written consent," the *Kurz* court then explained with respect to the DGCL §§ 219 and 220:

> I finally conclude that the Cede breakdown is part of the stock ledger for purposes of Section 219(c), just as the Cede breakdown has long been part of the stock ledger for purposes of Section 220(b). *I believe it will help rather than harm our law to treat the DTC participant banks and brokers who appear on the Cede breakdown as stockholders of record.* Because this represents a change in how Delaware practitioners understand the stock ledger for purposes of voting, it is not a conclusion I reach lightly.

*Id.* at *18.[9]

The *Kurz* court made quite clear that its ruling of who should be treated as "stockholders of record" applies only to *"banks and brokers who appear on the Cede breakdown."* *Id.* at *18, 23, 25, 28, 29, 30. The court explained that "A Delaware corporation that sees Cede on its stock ledger can obtain a Cede breakdown with ease," and "I therefore do not believe that there are any

---

[9] As a matter of state corporate law, the phrase "record holder" historically has been understood to refer to the person who is listed in a company's stock ledger. *See generally Kurz v. Holbrook,* 2010 WL 707425 (Del. Ch. Feb. 9, 2010) (noting "long-established rule that a corporation may rely on its stock ledger in determining which stockholders are eligible to vote" (citing *Shaw v. Agri-Mark, Inc.,* 663 A.2d 464, 469-70 (Del. 1995))); *Berlin v. Emerald Partners,* 552 A.2d 482, 494 (Del. 1988) ("Delaware law expressly recognizes the right of the corporation to rely upon record ownership, not beneficial ownership, in determining who is entitled to notice of and to vote at the meetings of stockholders."); *Preston v. Allison,* 650 A.2d 646, 649 (Del. 1994) ("[T]he corporation generally is entitled to rely on its own stock list and recognize votes . . . only when initiated by the stockholder of record."); *Testa v. Jarvis,* 1994 WL 30517, at *6 (Del. Ch. Jan. 12, 1994) ("Delaware corporations may rely almost exclusively on the stock ledger to determine the record holders eligible to vote in an election. . . . Where the company's ledgers show record ownership, no other evidence of shareholder status is necessary."). Chevedden says "Everyone agrees that a registered holder is one whose name appears on the company's stockholder list."

practical or policy-based impediments to *treating the Cede breakdown as part of the stock ledger.*" *Id.* at \*30. The *Kurz* court acknowledged that its decision to "treat the DTC participant banks and brokers who ***appear on the Cede breakdown*** as stockholders of record," *id.* at \*18, 23, 25, 28, 29, 30, constitutes a change in Delaware law and practitioner understanding. *Id.* at \*18. Not surprisingly, we understand an appeal is planned. Even so, and even if the *Kurz* court's Delaware law opinion somehow controlled or influenced the outcome of this federal law Rule 14a-8 case, Chevedden's proposal still is improper, and Apache still is entitled to exclude it from the proxy materials.

Under Rule 14a-8(b)(1), in order to be eligible to submit a proposal, Chevedden "must have continuously held at least $2,000 in market value, or 1%, of the company's securities . . . for *at least one year* by the date you submit the proposal" and Chevedden "must continue to hold those securities through the date of the meeting." Chevedden submitted his proposal in November 2009 so, under Rule 14a-8(b)(1), his eligibility requires him continuously to hold the required amount of stock from November 2008 through Apache's May 2010 stockholder meeting. Chevedden's purported "proof" of eligibility is Ram Trust's November 23 and December 10 letters, but those letters are insufficient under *Kurz* because Ram Trust does not appear on the Cede breakdown.

- Attached as X-26 is the March 18, 2009 Omnibus Proxy and Cede breakdown/DTC "Security Position Listing" for Apache. ***Ram Trust does not appear on the Cede breakdown.*** Ram Trust's subsidiary Atlantic Financial Services of Maine, Inc. also does <u>not</u> appear on the Cede breakdown. *See* Peper Aff. at ¶ 3.

- Attached as X-27 is the March 5, 2010 Cede breakdown/DTC "Security Position Report" for Apache. ***Again, Ram Trust does not appear on the Cede breakdown.*** Again, Atlantic Financial Services of Maine, Inc. also does <u>not</u> appear on the Cede breakdown. *See* Peper Aff. at ¶ 4.

- Ram Trust is *not* (and Atlantic Financial is *not*) a DTC participant bank or broker. USPX admits this at page 3 of its brief.

USPX's assertion at page 7 that "Under Delaware law, not only DTC, but all firms listed on a corporation's CEDE breakdown are considered owners of record" is a red herring. Ram Trust is *not* listed on Apache's Cede breakdown. Thus, even under *Kurz*'s generous interpretation, Ram Trust is *not* a "record" holder under Rule 14a-8(b)(2), and Chevedden's proposal is still deficient.

Under an application of *Kurz to* Rule 14a-8(b) and (f), Apache is entitled to exclude Chevedden's proposal.

C.   Under *Hain Celestial*, Apache is Entitled to Exclude Chevedden's Proposal

In its opening brief, Apache explained why the SEC staff's "informal view" in *Hain Celestial* is wrong, is not entitled to deference, and should not be followed based on its conflicts with the plain language of Rule 14a-8(b)(2), conflicts with the staff's prior interpretations, and conflicts with the SEC's repeated confirmations that proof must come from the "record" holder. Neither Chevedden nor USPX had any response to Apache's argument that the SEC staff's informal view in *Hain* fundamentally alters the plain, considered, unambiguous, and publicly vetted language adopted by the SEC. The staff's informal view in *Hain* (that "a written statement from an introducing broker-dealer constitutes a written statement from the 'record' holder") now also conflicts with the Delaware Chancery Court's recent decision in *Kurz v. Holbrook* (to "treat the DTC participant banks and brokers who appear on the Cede breakdown as stockholders of record").

1.   *Hain Celestial* Is Neither Controlling Nor Persuasive

Chevedden's brief does not mention *Hain* at all. USPX cites one post-*Hain* no-action letter, *Pioneer Natural Resources Company* (Feb. 12, 2010), to argue that *Hain* is not anomalous. The *Pioneer Natural* no-action letter did not cite or otherwise refer to *Hain* and involved a purported "corporate co-trustee and custodian" rather than an "introducing broker" as in *Hain*.

The closest analogue in this case to the "corporate co-trustee and custodian" in *Pioneer Natural* is "custodian" Northern Trust. While the custodian's letter in *Pioneer Natural* was timely, Northern Trust's January 22, 2010 letter in this case was so impermissibly tardy under Rule 14a-8(f)(1) that Chevedden does not even try to rely on it. In further contrast to the letter in *Pioneer Natural* in which the custodian specifically stated that the stock was "held for the benefit of [proponent]," Northern Trust's letter here does *not* say the stock is held for the benefit of Chevedden. *Indeed, USPX admits at page 5 of its brief that the "letter from Northern Trust does not" "confirm Chevedden's ownership."*

Given *Hain*'s novelty, its conflict with the staff's prior "precedent," and its conflict with Rule 14a-8(b)'s actual language, the staff's informal view in *Hain* is not persuasive here, and certainly is not controlling. Under the best of circumstances, the SEC staff's "no-action letters are nonbinding, persuasive authority." *See Apache v. NYCERS*, 621 F.Supp.2d 444, 448 (S.D. Tex. 2008); *AFSCME v. AIG*, 462 F.3d 121, 126, 129 (2d Cir. 2006); (X-11). *Hain*'s rogue status marginalizes even that modest utility.

2.    Ram Trust is an Investment Advisor, *Not* an Introducing Broker-Dealer

Even if the staff's informal view in *Hain* somehow did control the outcome of this case – it, of course, should not – Chevedden still would fail to satisfy Rule 14a-8(b)(2)'s eligibility requirements and Apache still would be entitled to exclude Chevedden's proposal. The view announced in *Hain* is that "a written statement from an ***introducing broker-dealer*** constitutes a written statement from the 'record' holder of securities, as that term is used in Rule 14a-8(b)(2)(i)." The staff's focus on an "introducing broker-dealer" as opposed to an investment advisor is important because, in § C.1.c.(1) of Staff Legal Bulletin No. 14, the SEC staff confirmed that "***a written statement from the shareholder's investment adviser . . . would be insufficient under the rule***" "unless the investment adviser is also the record holder." (X-12).

The fundamental premise that underlies Chevedden's and USPX's argument is their unverified and inaccurate assumption that Ram Trust is an "introducing broker." Thus, Chevedden told this Court that "Ram Trust Services does not serve as an investment advisor to defendant" and calls it "my broker," and USPX refers to Ram Trust as "an introducing broker." *See* USPX brief at 7, 10, 11, 13, and 15. Chevedden's submittal of Ram Trust's December 10, 2009 letter does not satisfy Rule 14a-8(b)(2) because, in fact, Ram Trust *is* an investment adviser, is *not* an introducing broker, and is *not* the record holder of Chevedden's purported stock.

On March 15, 2005, Ram Trust and certain of its investment advisers signed a "CONSENT AGREEMENT" with the State of Maine Office of Securities and agreed:

> This Agreement is entered into by the State of Maine Office of Securities (the "Office"), ***Ram Trust Services Inc. ("Ram")*** *an investment adviser company* with a principal place of business at 45 Exchange Street, Portland, Maine, 04101, and Michael P. Wood, John P. Higgins, and Kate C. Wilkinson, investment adviser representatives affiliated with RAM.
> . . .
> 2.    Pursuant to 32 M.R.S.A. § 10303(3), it is unlawful for ***an investment adviser*** licensed or required to be licensed under the Act to employ or contract with an individual as a representative of the investment adviser in Maine unless the individual is licensed.
> . . .
> NOW THEREFORE . . . it is agreed that:
>
> 1.    ***Ram***, Wood, Higgins and Wilkinson will comply with all licensing and other legal requirements governing persons ***acting as investment advisers*** and investment adviser representatives in the State of Maine at all times from the date hereof;

(X-28); *see also* 15 USC § 80b-2(a)(11) ("The Investment Advisers Act of 1940"). Ram Trust and its three investment adviser representatives agreed to pay $4,500 to avoid further penalties. *Id.* The Consent Agreement proves that Ram Trust is "an investment adviser company."

On its website, Ram Trust says that it "provides superior, highly personalized and fully integrated financial services primarily to high net worth families, individuals and private foundations," says that "*Unlike many investment managers*, Ram Trust Services is never content to rely solely on outside sources of information in assessing our investments," and refers to itself as "*investment advisors who invest in tandem with our clients.*" (X-15); *see also* www.ramtrust.com/strategy.htm. While Ram Trust calls itself "investment managers" and "investment advisors" on its website, it does not anywhere call itself a "broker" or an "introducing broker."

Ram Trust's familiarity with the consequences of "practicing without a license" may explain why Ram Trust did not sign an affidavit swearing that Chevedden actually owns the stock at issue, swearing that Ram Trust is not an investment advisor, and swearing that it is an introducing broker. That said, it appears that someone may have altered Ram Trust's normal letterhead for its submissions to Apache in this case because Ram Trust's usual letterhead has the words "**Registered Investment Advisor**" centered under its name at the top of the letterhead, but those words are missing from its letters here. *Compare* (X-29, 30, 31, and 32) *with* (X-2 and X-6). Ram Trust's November 23 and December 10, 2009 letters were first sent to Chevedden who then forwarded them to Apache. (X-2, X-6).

Further, Ram Trust does not purport to be, and could not legally be, the custodian or holder of Apache stock here. The Investment Advisers Act of 1940, 17 C.F.R. § 275.206(4)-2(a), makes it "a fraudulent, deceptive, or manipulative act" for an investment adviser "to have custody of client funds or securities" unless it's a "Qualified custodian."[10] Ram Trust is *not* a "Qualified Custodian" because it is not a bank, a "broker-dealer registered under section 15(b)(1)

---

[10] Ram Trust's December 3 letter confirms it is *not* a custodian. (X-6). And Chevedden says "Ram Trust Services does not serve as an investment advisor to defendant." If that's so, what exactly does Ram Trust *do* for Chevedden?

of the Securities Exchange Act of 1934," a futures commission merchant, or a foreign financial institution. *See* 17 C.F.R. § 275.206(4)-2(c)(3). Ram Trust Services is "a registered investment adviser" and it is not, and cannot be, the holder of Chevedden's purported Apache stock.

Chevedden does not dispute (and, at page 13, USPX admits) what Apache pointed out in its opening brief, that Ram Trust's subsidiary Atlantic Financial – *not* Ram Trust – is a broker. Ram Trust's own form of "Investment Management Agreement" confirms that it is not an introducing broker. (X-14 at ¶ 6) ("RAM will execute all requested purchases and sales of securities through Atlantic Financial Services of Maine, Inc. ("AFS"), or another registered broker-dealer of RAM's selection. The Client acknowledges that ***AFS is an introducing broker*** that is an affiliate of both RAM TRUST COMPANY and Ram Trust Services, Inc."). USPX suggests that "Since Atlantic Financial Services of Maine is a wholly owned subsidiary of RTS, RTS is Chevedden's broker as well as investment advisor." *Id.* USPX has not cited any authority to support its more than implicit proposition at pages 13-14 that the corporate form should be ignored and parents (like Ram Trust) and subsidiaries (like Atlantic Financial) should be treated as a single entity for purposes of Rule 14a-8 and federal proxy law. In our view, neither the SEC nor the federal courts should be so quick to disregard what USPX calls a "technicality" and the "[m]eaningless challenge" of the corporate form.

Chevedden says that the SEC "has never defined a record holder." USPX says at page 7 that "Nowhere do federal regulations define 'record holder' for purposes of Rule 14a-8(b)(2)." Rule 14a-1(b)(i) defines "record holder" for the purposes of Rules 14a-13, 14b-1 and 14b-2 as follows:

> For purposes of Rules 14a-13, 14b-1 and 14b-2, the term "record holder" means any broker, dealer, voting trustee, bank, association or other entity that exercises fiduciary powers which holds securities of record in nominee name or otherwise

or as a participant in a clearing agency registered pursuant to section 17A of the Act.

17 C.F.R. § 240.14a-1(b)(i).

The SEC knows how to define a term broadly, and knows how to apply that definition to a particular set of rules. The SEC chose not to apply this broad definition to Rule 14a-8. But even if we went ahead and applied this inapplicable and broad definition to Rule 14a-8, an introducing broker cannot be – and Ram Trust is not – a Rule 14a-8(b)(2) "record" holder because it does not hold or have custody of securities and is not a participant in a § 17A clearing agency. In the absence of such custody, an introducing broker does not have a sufficient nexus with the securities reliably to verify that the shareholder status and eligibility requirements have been met.

Chevedden's statement that Ram Trust's "sole function is as a custodian" is false. Ram Trust's December 10 letter in which Ram Trust writes that Northern Trust Company, not Ram Trust Services, is the custodian of the shares that Chevedden claims to own. (X-5). Even under the inapplicable and inapplicably broad Rule 14a-1's definition, Ram Trust is not a "record" holder. To that end, USPX does not even try to tie its general view at page 12 that "Some investment advisors are brokers who not only advise but also transact trades on behalf of clients" to the facts of this case. Nor does USPX explain how, as a practical matter, a company like Apache can readily ascertain whether investment advisors are the "advice-giving" type or the "advice-giving and trade-transacting" type of investment advisor. That is particularly true where the proponent (Chevedden) affirmatively denies that the investment advisor (Ram Trust) is an advisor and, instead, affirmatively (mis)represents that the investment advisor is an introducing broker. Section 15(a)(1) of the Securities Exchange Act, 15 U.S.C. § 78o(a)(1), makes it illegal for a broker or dealer to effect any transaction unless it is registered with the SEC. Section

15(a)(1) provides "It shall be unlawful for any broker or dealer . . . to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered [with the SEC]." The securities laws require multiple forms of registration. *See, e.g.,* 17 C.F.R. § 240.15b1-1(a) ("An application for registration of a broker or dealer . . . shall be filed on Form BD"); 17 C.F.R. § 240.15b1-1(b) ("Every application for registration of a broker or dealer . . . shall be filed with the [CRD] operated by [FINRA]"); 15 U.S.C. § 78o(b)(8) (registered brokers *shall* become a member of a registered securities association, such as FINRA, or else it is unlawful); 15 U.S.C. § 78ccc(a)(2)(A) ("SIPC shall be a membership corporation the members of which shall be all persons registered as brokers or dealers [with the SEC]"); *see also* Section III of the SEC Guide to Broker-Dealer Registration, April 2008, (X-33). As best we can tell, Ram Trust has *not* filed an application on Form BD, is *not* a member of FINRA, (X-34), is *not* a member of SIPC, (X-35), and is *not* even a member of the NYSE, (X-36). Even if a letter from an introducing broker was sufficient under Rule 14a-8(b)(2) – it is not – a letter from Ram Trust would not be.

3. Rule Changes Should Come from the SEC Itself, Not from the Staff's "Informal Views"

The U.S. Securities and Exchange Commission knows how to change its rules when it wants to and, if it thought it advisable, could have amended Rule 14a-8(b)(2) to allow proof from a purported shareholder's broker or investment advisor or some entity *other than* the record holder. Typically, the SEC will provide public notice and a comment period before making a rule change. *See, e.g.,* Release No. 34-40018 (May 21, 1998); Release No. 34-39093 (Sept. 18, 1997); Release No. 34-25217 (Dec. 21, 1987); Release No. 34-20091 (Aug. 16, 1983); Release No. 34-19135 (Oct. 14, 1982). Any amendment to Rule 14a-8(b)(2)'s unambiguous requirement that shareholders must satisfy their burden of proving their status and eligibility by submitting

"to the company a written statement from the 'record' holder of your securities" should come, if at all, from the SEC itself. Not from the SEC staff. And, very respectfully, not even from a federal district court. Unless and until the SEC changes the rule, Rule 14a-8(b)(2) should be applied as written.

It also is worth noting that, for purposes of DGCL § 219(c), the *Kurz* court decided "to treat the DTC participant banks and brokers who appear on the Cede breakdown as stockholders of record." 2010 WL 707425 at *18. The purported introducing broker here, Ram Trust, is *not* a DTC participant, does *not* appear on the company's Cede breakdown, and actually is *not* even an introducing broker!

The plain language of Rule 14a-8(b)(2) itself should be controlling. But even under the staff's informal views in *Hain,* Apache is entitled to exclude Chevedden's proposal.

### III.
### Shareholders Easily Can Comply with Rule 14a-8(b)(2)

USPX disputes Apache's suggestion that Rule 14a-8(b)(2) means exactly what it says. USPX argues that applying Rule 14a-8(b)(2) as written "would hand corporations an easy excuse for disallowing practically all shareholder proposals" because there are "drawbacks" to shareholders being registered holders of their stock, and because it's "impossible" for shareholders to get confirmation letters from DTC, typically the actual "record" holder of their stock. USPX is wrong on all counts.

This Court's application of Rule 14a-8(b)(2) as written will not impair the ability of actual shareholders to prove their shareholder status and eligibility to submit proposals.

A.   Shareholders Can Prove their Eligibility as "Registered Holders" under Rule 14a-8(b)

In its opening brief, Apache noted that Chevedden can avoid any actual or perceived burden of proof under Rule 14a-8(b) by registering in his own name the stock he truly owns, rather than having the stock held in street name by DTC's nominee Cede & Co.   Chevedden does not dispute that he easily could satisfy Rule 14a-8(b)(2) by being a "registered holder of your securities, which means that your name appears in the company's records as a shareholder" such that Apache and the other companies to which Chevedden submits proposals "can verify your eligibility on its own."   While USPX admits at page 19 that "*Direct registration of shares is possible,*" it opines that direct registration has some "drawbacks."   And, at page 4, USPX told this Court that "Today, a corporation's stockholder ledger lists, for the most part . . . DTC. Corporations no longer know who their shareowners are."   (Ellipse in original).   USPX's assertion is just plain false.

Apache knows who many of its shareholders are – *5,964 stockholders to be exact*. Apache's Certified Listing of Registered Stockholders is 177-pages long and lists exactly 5,964 registered stockholders, the majority of whom are individuals rather than institutions.  *See* Peper Aff. at ¶ 5.  (The Certified Listing actually has 5,965 entries, but Cede & Co. is listed twice.  *Id.* Each of these 5,964 stockholders is a person or entity whose "name appears in the company's records as a shareholder" under Rule 14a-8(b)(2)'s first sentence.[11]  It may be fun for USPX (and its co-signer CorpGov.net) to have yet another forum in which to broadcast their hyperbolic message with unconstrained abandon, but it's nothing short of irresponsible for them to do so here.

---

[11] If it would be useful to the Court, Apache is willing to provide a copy of its 177-page Certified Listing to the Court under seal for the Court's *in camera* inspection.  The Certified Listing is confidential.  *See* Peper Aff. at ¶ 5.

Over 5,960 of Apache's stockholders are willing to endure these unsubstantiated "drawbacks". It is a fair inference that hundreds of thousands more, perhaps millions, are registered stockholders at other US public companies. Given Chevedden's singular commitment to the submission of shareholder proposals, he perhaps should be willing to shoulder a few drawbacks to ease compliance with Rule 14a-8(b)'s shareholder status and eligibility requirements.

Chevedden and USPX make much ado about the US system of beneficial ownership, but their criticisms overlook the simple fact that shareholders who buys shares of Apache (or any public company for that matter) have the option of registering such shares in the shareholder's name. This typically can be accomplished by making an election with the bank or broker or by buying the shares directly from the company. The SEC itself recently acknowledged this on its website:

> If I am a beneficial owner and want to cast my own vote in an election directly, rather than have my broker-dealer cast it for me, can I?
>
> Yes. There are two ways you can do this: (1) become a registered owner or (2) ask your broker to execute a proxy in your behalf.

At http://www.sec.gov/spotlight/proxymatters/proxy_materials.shtml#what_is_registered_owner, the SEC discusses in some detail shareholders may "certificate" their securities positions and how they can move their stock holdings into a "direct registration system." Similarly, at http://www.dtc.org/dtcpublic/html/lob2/prod6/drsdetail.htm, the DTC discusses how the direct registration process works.

Apache has participated in the direct registration system since March 22, 2004. (X-37). In addition, Apache, like many public companies, also has a Dividend Reinvestment Plan that allows shareholders to enroll some or all of their shares in the plan such that the shareholder will

A.2d 1351, 1354-55 (Del. 1987), the Delaware Supreme Court explained that "In making that choice, the burden must be upon the stockholder to obtain the advantages of record ownership. The legal and practical effects of having one's stock registered in street name cannot be visited upon the issuer. The attendant risks are those of the stockholder, and where appropriate, the broker." (*Citing Lewis v. Corroon & Reynolds Corp.*, 57 A.2d 632, 634 (Del. Ch. 1948); *Nickles v. United Nuclear Corp.*, 192 A.2d 628 (Del. Ch. 1963)). *See also Am. Hardware Corp. v. Savage Arms Corp.*, 136 A.2d 690, 693 (Del. 1957); *In re Giant Portland Cement Co.*, 21 A.2d 697 (Del. Ch. 1941)).

Chevedden asks the court to ignore the obvious policy underlying the rule: that shareholders who own shares in street name bear the responsibility of obtaining and providing companies with adequate proof of ownership. This policy, which is explicit in the rule, has been a core component of the rule for over 34 years. *See* SEC Release No. 34-12999 (Nov. 22, 1976) ("If the management requests documentary support for a proponent's claim that he is a beneficial owner of a voting security of the issuer, the proponent shall furnish appropriate documentation within 10 business days after receiving the request."). It's Chevedden's choice – either become a registered holder so Apache (and other companies) know whether he's a shareholder, or comply with Rule 14a-8(b)(2)(i)'s strict requirements. Chevedden obviously is not trying to hide his status as a *purported* shareholder. What he may be trying to hide is the fact that he is *not actually* a shareholder.

B.  Shareholders Can Prove their Eligibility with "Confirmation of Shares" Letters from DTC

As discussed in Part II.A., and despite USPX's false statement to the contrary, DTC does provide "Confirmation of Shares" letters, and DTC's website indicates exactly what the letters look like and indicates exactly how to request them.

be the "record" holder for those shares. Apache's Plan is only available to a "shareholder of record" and, thus, the Plan provides that:

> Beneficial owners, whose shares of Apache stock are held for them in "street name" by brokers, bank nominees or trustees, are not shareholders of record; however, they can have the shares they wish to enroll in the plan *transferred into their own names*. Please consult your broker or trustee for further information on this step; any fees and paperwork requirements are established by brokers and trustees, not by Apache or Wells Fargo.

*See* http://www.apachecorp.com/Investors/DRIP.aspx. Part of Apache's Dividend Reinvestment Plan is a Direct Stock Purchase Plan that enable shareholders to make "cash investments from $50 to $25,000 per calendar quarter." *See* http://www.apachecorp.com/Investors/DSP.aspx.

As a frequent participant in the shareholder proposal process (perhaps the most frequent participant in history), Chevedden knows the value of being a registered shareholder. And being a registered holder should help Chevedden avoid a 53rd reported exclusion for failure to prove requisite stock ownership under Rule 14a-8(b). *See* n.3, *supra*. If Chevedden were a registered shareholder, then Apache (and other companies) would be able to identify him as a shareholder in their stock ledgers without any further action by him, and he would not have to provide further proof of ownership. Instead of choosing to register his shares in his name, Chevedden has elected to hold his shares as a beneficial owner. As a result, Rule 14a-8(b) places the burden of proving shareholder status and eligibility squarely on Chevedden and other shareholders who "are not a registered holder." *See also* (X-12) (Staff Legal Bulletin No. 14 at § C.1.c. (July 13, 2001) (proponent "is responsible for proving his or her eligibility to submit a proposal to the company")).

That is the choice Chevedden says he has made, and it's consistent with Delaware law that, having chosen to be a beneficial owner rather than a registered or record holder, Chevedden must accept the burdens associated with beneficial ownership. In *Enstar Corp. v. Senouf*, 535

If he really is a shareholder, Chevedden could have requested and obtained a "Confirmation of Shares" letter from DTC. But he chose not to do so, just as he chose not to be a registered holder. This Court should not permit Chevedden to avoid the requirements of Rule 14a-8(b).

IV.

<u>Conclusion</u>

Apache has not asked this Court to make any sweeping declaration of change in the law – Apache has simply asked that this Court, under the facts of this case, declare that Apache properly may exclude Chevedden's proposal from Apache's proxy materials in accordance with Rule 14a-8(b) and (f). In stark contrast, to deny Apache's requested relief would require this Court to depart from the plain language of Rule 14a-8(b), adopt the staff's informal view in *Hain Celestial* as the controlling law,[12] and then unquestioningly accept the demonstrably counter-factual notion that Ram Trust is an "introducing broker" even though its own documents prove that it is not.

This Court should declare that Apache properly may exclude Chevedden's proposal from Apache's proxy materials in accordance with Rule 14a-8(b) and (f) promulgated under the Securities Exchange Act of 1934.

---

[12] In the second to last sentence of its brief, USPX actually and expressly asks "the court to conclude that an introducing broker can be the owner of record for Rule 14a-8(b)(2)."

Dated: March 8, 2010

Respectfully submitted,

/s/ Geoffrey L. Harrison
Geoffrey L. Harrison
Attorney-in-Charge
Texas State Bar No. 00785947
SD/TX Admissions No. 16690
Chanler A. Langham
Texas State Bar No. 24053314
SD/TX Admissions No. 659756
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, #5100
Houston, TX 77002
Tel.: (713) 651-9366
Fax: (713) 654-3367
E-mail: gharrison@susmangodfrey.com
E-mail: clangham@susmangodfrey.com

*Attorneys for Plaintiff Apache Corporation*

## Certificate of Service

I certify that on March 8, 2010, this pleading electronically was transmitted to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to ECF registrants. A copy of this pleading also is being provided to defendant Chevedden and to *amicus* USPX (1) by email of the brief only sent to the email addresses they have used to communicate with Apache and with the Court's Case Manager in this case (olmsted7p@earthlink.net and mail@glynholton.com) and (2) by overnight mail of the brief and the exhibits.

/s/ Geoffrey L. Harrison
Geoffrey L. Harrison